## Ella Gregory v. The State.

No. 6555. Decided June 21, 1922.

Rehearing Denied November 15, 1922.

**1.—Robbery—Indictment—Name of Party Injured—Initials.**

Where the indictment charged a robbery of R. Hilgartner, and the proof showed the injured party's name to be W. B. Hilgartner, and that he went by the name of Robert or Bob, and that checks were generally made payable to him by those names, and defendant admitted that if the indictment charged the robbery of Robert Hilgartner he would have no just cause for complaint, but Robert not being his true name, the State could not use the initials thereof; held, there was no reversible error.

**2.—Same—Evidence—Conspiracy—Other Offenses—Intent—System.**

Where the testimony admitted was a part of the case being tried, and explained the relation of the parties and the actions of appellant relative to the alleged stolen car and the conspiracy between the parties there was no error in admitting same to show, system and intent. Following Hunt v. State, 89 Texas Crim. Rep., 89, and other cases.

**3.—Same—Evidence—Other Offenses.**

Where, upon trial of robbery, it happened that proof of a separate and distinct criminal act similar to that involved in the instant prosecution became admissible in evidence to controvert the defendant's denial of her participation in the robbery, there was no error. Following Higgins v. State, 87 Texas Crim. Rep., 424.

**4.—Same—Evidence—Other Offenses—Fruits of Crime—Conspiracy.**

Where, upon trial of robbery, defendant denied that she ever had possession of certain watches found, which were contemporaneously taken from others, not the party alleged to have been injured, in the instant case, but the evidence showed that they were found in the bushes on the side of the road at the exact point where defendant went when she got out of the car after being overtaken by the officers, the same was admissible in evidence, it being shown that she and her companions had entered into a conspiracy to commit robberies with the ultimate understanding that an automobile was to be so acquired in which they were all to leave the State; the defendant being arrested in a car so acquired.

**5.—Same—Order of Evidence—Practice in Trial Court—Rebuttal.**

While the propriety of the introduction of this testimony by the State in the development of its case in chief may be doubted and would more properly have come in rebuttal, yet it being material and relevant in view of defendant's explanation, the anticipation of this by the State under the facts of this case shows no reversible error.

**6.—Same—Evidence—Communications Between Conspirators.**

Where one of the conspirators received information from defendant, after she was in jail, as to where she had secreted certain stolen watches obtained in another robbery, and this was communicated to the officer and he together with the co-conspirator found the watches as the result of such information, the objection that the same should have been excluded as being a statement of a co-conspirator made after the conspiracy ended is not tenable.

**7.—Same—Rehearing—Name of Injured Party—Indictment—Initials.**

Where it was not contended that the injured party named in the indictment was not known as Robert Hilgartner, but it is urged that his real name not being Robert, the pleader might not allege his name as R. Hilgartner, held, that initials may always be used instead of the full given name, and there is no reversible error.

**8.—Same—Evidence—Other Offenses—Conspiracy.**

Where the objection is again urged in appellant's motion for a new trial to the testimony of other offenses in which each witness detailed the facts relating to a robbery, in which each lost among other things a watch, but it was shown that all of said watches were in defendant's possession and were secreted by her at the time; that she and her co-conspirators were overtaken in possession of the automobile taken from the alleged owner in the instant robbery, there was no reversible error.

**9.—Same—Rule Stated—Conspiracy—System—Other Offenses—Identity of Intent.**

The fact that defendant was found in possession of property which was the fruits of other thefts and robberies committed by defendant's co-conspirators near the time of the instant robbery, with all of which defendant was implicated according to the State's testimony it is admissible in the instant case, to show system, identity, etc., where defendant denied the robbery and where the case was dependent upon circumstantial evidence and identity of intent, plan or purpose as well as identity of persons may be shown.

**10.—Same—Evidence—Bill of Exceptions.**

Where the bills of exception in the record on appeal do not state any conversation or statement as alleged between a conspirator and the officer,

the same cannot be considered, as there is nothing to show that the details of said conversation were ever in fact .introduced by the State.

**11.—Same—Evidence—Co-conspirators—Conversations.**

Conversations between any or all of the alleged conspirators in the instant case prior to or co-incident with the robbery charged in the instant case, and which evidence such purpose and plan on the part of said parties were admissible in evidence.

Appeal from the District Court of El Paso.    Tried below before the Honorable W. D. Howe.

Appeal from a conviction of robbery with firearms; penalty, five years imprisonment in the penitentiary.

The opinion states the case .'

*Hudspeth & Harper,* for appellant. On the question as to admitting testimony as to other offenses:  Long v. State, 39 Texas Crim. Rep., 546; Hinson v. State, 51 id., 105; Johnson v. State, 50 id., 118; James v. State, 40 id., 194; Elkin v. State, 57 id , 248; Denton v. State, 42 id., 427; Harris v. State, 55 id., 478.

On question of name of injured party: Roberts v. State, 144 S. W., 940; Nance v. State, 17 Texas Crim. App., 388; Pickens v. State, 9 id., 270; Stewart v. State, .31 Texas Crim. Rep., 154.

On question of admitting testimony as to stolen property:    Owens v. State, 16 Texas Crim. App., 469.

*R. G. Storey,* Assistant Attorney General, *Chas. Owen,* for the State.   On the question of sufficiency of indictment: Stokes v. State, 46 Texas Crim. Rep., 357.

On testimony as to other offenses:    Fry v. State, 86 Texas Crim. Rep., 73; Nixon v. State, 31 id., 209; McGlasson v. State, 40 S. W. Rep., 503; Hennessy v. State, 23 Texas Crim. App., 354.

HAWKINS, Judge.—Conviction is for robbery by the use of firearms, with a penalty of five years in the penitentiary.

There appear in the record twenty-four bills of exception.  Many of them present the same legal question from different angles.   It will not be necessary to discuss them separately.

The indictment charged a robbery of R. Hilgartner.   The proof showed the injured party's true name to be W. B. Hilgartner, but that he went by the name of Robert or Bob, and checks were generally made payable to him by those names.   Article 456, C. C. P., reads:

"In alleging the name of the defendant, or of any other person necessary to be stated in the indictment, it shall be sufficient to state one or more of the initials of the Christian name and the surname. When a person is known by two or more names, it shall be sufficient to state either name."

It is admitted by appellant that if the indictment charged the robbery of "*Robert* Hilgartner" he would have no just cause for complaint, the evidence showing such was the name by which he was known; but it is urged that *Robert* not being his true name, the State could not use the initial thereof. We are not able to concur with this contention. In Section 95, 10th Ed., Mr. Wharton says:

"The modern rule is that a variance in names is not now regarded as material, unless it appears to the court.that the jury was misled by it, or some substantial injury is done the accused, such as that, by reason thereof he was unable intelligently to make his defense, or he was exposed to the danger of a second trial on the same charge."

He cites many cases in support of the rule. Our own statute quoted (*supra*) appears to recognize the justness of it. In the light of the proposition stated by Mr. Wharton, our statute, we think, should be construed as though it read: 'When a person is known by two or more names it shall be sufficient to state either name, or the initial of either name by which he is know.' We conclude no variance occurred between the name as alleged and the proof offered.

On account of the unusual nature of the case we have had difficulty in making application of the law which should control in disposing of the main question raised, and which makes necessary a rather detailed statement of the facts. On the night of January 24, 1921, Hilgartner was robbed of an 8-cylinder Cadillac automobile, overcoat, watch and some other articles. He was running a taxicab stand, and received a telephone message to come to a certain place for passengers. Upon reaching there a man and woman, identified by him as being George Gunther and appellant, entered his car, giving him an address to which he started. Before reaching there he was compelled at the point of a pistol to surrender his personal belongings and abandon the car. Gunther was jointly indicted with appellant, entered a plea of guilty, and was used by the State as a witness against appellant. He testified that he, appellant and the latter's son, (Robert Speer) discussed generally about embarking in criminal enterprises which was to culminate in obtaining by robbery a car in which the three would go to Denver; that he and appellant located the Hilgartner car, and effected the robbery, after which they phoned to Speer, who was calling on a young lady, that they were ready to start for Denver. Some dishes and appellant's trunks were taken to the young lady's home for storage until called for, and the three parties started for Denver early on the morning of the 25th of January. They drove all day, and that night, reaching Albuquerque about 2 o'clock on the morning of the 26th. Robert Speer was taken to a hotel, having become ill during the trip. A message had been transmitted to the officers at Albuquerque reporting the loss of the car and describing it. After daylight the car was recognized by officer Salazar, who gave chase, and overhauled it at the fourteen and

37—92 T. C.

one-half mile post out of the city, the stolen car having run out of gasoline. Gunther got out on the west side of the car, and appellant on the east side; the latter going behind some bushes some eight or nine feet from the road. Gunther was never on that side of the car. These facts become important in view of later developments. Appellant denied her presence, participation or knowledge of Hilgartner's robbery. She explains her presence in the car by saying that Gunther told her it belonged to his father who had driven it to El Paso and returned on the train; that he, Gunther, was going to drive the car back to Denver, and had invited her and her son to go with him; that the first knowledge she had that the car was stolen was when she insisted on him stopping when the officers were after them at Albuquerque and he then told her the car was stolen. If her testimony was true, her connection with and presence in the Hilgartner car at the time of the arrest was entirely innocent and she should have been acquitted.

Gunther testified he had known Robert Speer in Wyoming, and had corresponded with him regularly since Speer had been in El Paso; that he, Gunther, reached El Paso on December 26, 1920, and saw appellant for the first time on that date, that soon after his arrival in El Paso he went to appellant's apartments to live. Over her objection he was permitted to testify that he, appellant and Speer had discussed various proposed criminal enterprises, including a proposed robbery of the gambling houses in Juarez, which enterprise was abandoned because the "concessions closed;" that he also discussed with them beforehand a number of robberies which were carried out; that it was the ultimate purpose to secure a car in this way and all three of them go to Denver in it. He was permitted to relate the robbery of one Nichols on December 31st in which he claimed Speer participated, where one hundred and sixteen dollars and a watch were obtained; also the robbery of Dickson by himself and Speer on January 10th when a watch, pocket book and some money was taken, also Dickson's car which was a Ford, and was abandoned by them and recovered next morning; also the robbery of Pennington by appellant on January 17th, when a watch and Buick six automobile was taken. Gunther testified that the money secured from these various robberies was divided and the watches turned over to appellant; that it was the understanding that the trip to Denver was to be made in the Buick, but upon returning after having left it on the street, a crowd of men were around it, and he was afraid it had been identified; that he left it, and then they later got the Hilgartner car to make the trip in. Nichols, Dickson and Pennington were permitted to testify about being robbed, and to identify three watches as belonging to them respectively.

In Hunt v. State, 89 Texas Crim. Rep., 89, 229 S. W. Rep., 869, will be found the following statement: "It was permissible, we

think, for the accomplice to testify that he and appellant had entered into an agreement or conspiracy to steal Ford cars, and that this car was taken by appellant to demonstrate how easy it was to carry out the purpose of the agreement. It was a part of the case being tried; explained the relation of the parties, and the actions of appellant relative to the car. But it was error to permit the State to show thefts by appellant of other automobiles. This can only be done where it (a) appears in developing the *res gestae,* or (b) becomes necessary to connect the defendant with the case on trial or (c) to show intent, where that is an issue, or (d) when it tends to show system; but the distinction between "system" and "systematic crimes" should always be borne in mind in admitting this kind of testimony. Evidence of other thefts are not admissible in the absence of one of the four elements just mentioned, even though they may have been committed in pursuance of the same conspiracy under which the theft in the case on trial occurred. Cone v. State, 86 Texas Crim. Rep., 290, 216 S. W. Rep., 190; Long v. State, 39 Texas Crim. Rep., 537, 47 S. W. Rep., 363; Smith v. State, 52 Texas Crim. Rep., 80, 105 S. W. Rep., 501.''

We conceive the foregoing quotation to embrace sound propositions of law. If Gunther, appellant and Speer had a general understanding to embark in a career of crime, such as robbery and theft it was pertinent for Gunther to so state; if in the discussion of the general subject the proposed Juarez expedition was included we are of opinion no error was committed in permitting Gunther to relate it to the jury. Whether the robberies of Nichols, Dickson and Pennington could be shown will depend on whether they legitimately fall within any of the principles announced. In Higgins v. State, 87 Texas Crim. Rep., 424, 222 S. W. Rep., 241, Judge Morrow, speaking for the Court, says: "It sometimes happens that proof of a separate and distinct criminal act similar to that involved in the prosecution becomes admissible in evidence to controvert some defensive theory advanced by the accused. Wharton's Crim. Evidence, Vol. 1, Section. 41.''

Appellant challenged Hilgartner's identification of her as being present when his car was taken; attempted to show by him that he had reported that two men, one dressed like a woman, had perpetrated the offense. She also showed that Gunther first claimed that he and a boy named Nelson, the latter dressed in woman's clothes, robbed Hilgartner. She denied that she knew anything about the robbery, and denied ever having discussed, advised or agreed with Gunther to commit crime of any character, or that she ever received from him the fruits of such robberies. Gunther testified that when the officers were pursuing them near Albuquerque just before the arrest appellant told him she was hiding the watches in a can, but did not know what she did with them until after they were in jail; that she then

told him she hid them in the bushes where the officers caught them. He later communicated this information to officer Gere, and went with him to a point opposite the fourteen and one-half mile post opposite which the car stopped, and after a search the can was found with three watches in it, which were identified by Nichols, Dickson and Pennington as belonging to them, and which were taken at the time they were robbed. Appellant denies that she ever had possession of the watches, but the evidence shows they were found in the bushes on the side of the road at the exact point where appellant went when she got out of the car after being overtaken by the officers. Under the peculiar facts of this case we believe all the testimony was admissible relative to the Nichols, Dickson and Pennington robberies, and the finding of the watches. It was the theory of the State, supported by testimony, that Gunther, appellant and Speer had entered into a conspiracy to commit robberies with the ultimate understanding that an automobile was to be so acquired in which the three of them would leave the State. Appellant is arrested in a car so acquired. She asserts her presence therein to be solely as an invited guest. To rebut it we believe the State may properly show that she was in possession of the fruits of other robberies committed in pursuance of the conspiracy, and attempting to leave the State therewith. It tended to support Gunther's testimony to combat her explanation of her presence in a stolen car, and to show her guilty connection with the offense for which she was on trial. (For authorities see page 98, Branch's Ann. P. C.). We seriously question, however, the propriety of the introduction of this testimony by the State in the development of its case in chief. It should more properly have come in rebuttal. It became material and relevant in view of appellant's explanation, and we think the anticipation of this by the State under the facts of this case shows no such error as would warrant a reversal.

Having concluded that the testimony as to the Nichols, Dickson and Pennington robberies, and the recovery and identification of their watches, was admissible disposes of many of the objections urged to the evidence of Gunther and Gere leading to the recovery of the watches. Gunther received information from appellant after she was in jail as to where she had secreted them. This was communicated to Gere, and together he and Gunther found them as the result of her statement. The objection that Gunther's statement to Gere about it should be excluded as being that of a conspirator made after the conspiracy ended is not tenable. It was a confession made by appellant which was found to be true as the result of which stolen property was found which conduced to establish guilt. (Art. 810, C. C. P.) The fact that the confession was made to a former confederate, and this information transmitted to an officer, would not change the application of the rule; and that property was found as a result thereof not taken in the Hilgartner transaction would not, we think, under the unusual facts in this case, render the evidence inadmissible.

We have examined the other bills of exceptions not covered by our discussion, and think no errors are presented thereby.

The judgment of the trial court is affirmed.

*Affirmed.*

ON REHEARING.

November 15, 1922.

LATTIMORE, JUDGE.—Complaint is renewed and urged in appellant's motion for rehearing that a charge in the indictment of a robbery of R. Hilgartner is not sustained by proof that the name of .the injured party is W. B. Hilgartner, and that he goes by the name of Robert Hilgartner. Certainly to a common intent only as to the party injured, is all that is required in naming such person in an indictment. Wells v. State, 4 Texas Crim. App., 20; Bird v. State, 16 Texas Crim. App., 528; Elehash v. State, 35 Texas Crim. Rep., 599; Johnson v. State, 60 Texas Crim. Rep., 305. Art. 456, C. C. P., states that if a person is known by two or more names, it shall be sufficient to state in the indictment either name. It is not contended in the instant case that the injured party was not known as Robert Hilgartner but it is urged that his real name not being Robert, the pleader might not allege his name as R. Hilgartner. Initials may always be used instead of the full given name, and we see no violation of any rule or any sufficient reason why the initials of the given name by which the party is also known, may not be used as well as the initial of his real given name.

Referring to the objection again urged in this motion to the testimony of Nichols, Pennington and Dickson, in which each details the facts relating to a robbery in which each lost among other things a watch,—we observe that the watch lost by each of said parties was in court and was identified by the owner as a part of his testimony, and the evidence adduced was amply sufficient to show that all of said watches were in the possession of appellant and were secreted by her at the time she, George Gunther and appellant's son were overtaken and found in possession of the automobile taken from Hilgartner in the instant robbery. The robberies of Nichols, Pennington and Dickson antedated that in the instant case by a few days. Upon this trial appellant asserted her innocent connection with the Hilgartner automobile and denied all knowledge of or connection with any criminal enterprise engaged in by George Gunther or by Gunther and appellant's son, Robert Speer. As stated in the original opinion she claimed that without any guilty knowledge of the theft of said automobile, she was being carried therein by Gunther to Albuquerque. Mr. Hilgartner testified that he was robbed by a man and a woman, and stated that in his belief appellant was the woman engaged in said robbery. He admitted that the woman had

on a veil and that he did not get a full view of her features. The fact that appellant was found in possession of property which was the fruits of other thefts and robberies committed by Gunther or by Gunther and Robert Speer near the time of the instant robbery, with all of which appellant was implicated according to the State's contention, would be provable in any case involving system, identity or a claim of innocent intent and possession of the fruits of the instant theft, or where the case was dependent upon circumstantial evidence. We think the identity referred to in the authorities may be identity of intent, plan and purpose as well as identity of persons. The authorities are very numerous supporting the position above stated and as far as we know are without controversy among themselves.

Another ground of this motion for rehearing is that the trial court erred in allowing officer Gere to testify what he had been told by George Gunther, after the alleged robbery had been committed and the parties had been arrested and placed in jail, and out of the presence and hearing of the appellant. We have examined each of the bills of exception in the record and find in none of them any conversation or statement set out as transpiring between Gunther and Gere. Bills of exception Nos. 12, 13 and 14 present all of appellant's objections to the testimony of Mr. Gere, In bill of exceptions No. 12 it is stated among other things and objections that officer Gere testified that he made a trip on March 25 with Gunther and had a conversation with him as to what would be found at a certain place. None of the details of such conversation appear in the bill of exceptions nor any of the facts referred to or discussed between the parties further than as just stated. Bill of exceptions No. 13 reflects the fact that appellant asked Gere on cross-examination if she stopped at the place pointed out by Gunther; that the court thereupon warned appellant that this was calling for part of the conversation between Gere and Gunther, and that if an answer to this question was sought, he would allow the State to introduce the conversation between said parties. Appellant insisted and the question was answered, but there is nothing in this or any other bill of exceptions to show that the details of said conversation were ever in fact introduced by the State. Bill of exceptions No. 14 sets up only objections to witness Gere testifying with reference to a tire tester. We find nothing in the record to sustain the complaint under discussion directed at the introduction of a conversation between Gere and Gunther.

We do not think the court erred in admitting the testimony of Gunther with reference to conversations and communications had with appellant's son, Robert Speer, prior to the time of the instant robbery, which conversations and communications referred to plans and purposes for committing various thefts and robberies. That Gunther, appellant and her son were acting together and were engaged in a common conspiracy to commit such thefts and robberies,

and that each was connected criminally either as a principal, accomplice or accessory with all the thefts and robberies charged, was the theory of the State. Conversations between any or all of such co-conspirators prior to or coincident with the robbery charged in the instant case, and which evidence such purpose and plan on the part of said parties, were admissible.

An exhaustive brief and argument has been filed in support of appellant's motion, but an examination of same fails to convince us of any error in the original disposition of the case, and the motion for rehearing will be overruled.

*Overruled.*