### NICK MARKS v. THE STATE.

No. 21854. Delivered June 26, 1942.
Rehearing Denied October 14, 1942.

510

The opinion states the case.

*W. R. Parker* and *Byron Matthews*, both of Forth Worth, and *Polk Shelton*, of Austin, for appellant.

*Forrester Hancock,* Criminal District Attorney, and *F. L. Wilson,* Assistant Criminal District Attorney, both of Waxahachie, and *Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of a conspiracy to commit a felony, and by the jury given a sentence of five years in the penitentiary.

The indictment charges appellant and one Betty Marks, his wife, with a conspiracy to commit theft from one E. W. Alexander.

It appears from the facts that Betty Marks, under the name of Madam Thompson, was a fortune teller or clairvoyant; that her husband, appellant, had rented a building in Waxahachie and equipped the same with electric lights, and a sewing machine and furniture, and had published in the daily newspaper a notice as follows:

"Phrenologist now in Waxahachie, Texas. Don't fail to see Madam Thompson who answers all questions of love, business and law suits. Answers three questions free. All readings confidential. Open from eighty-thirty a. m. until nine-thirty p. m. Madam Thompson convinces the most skeptical people."

Mr. E. W. Alexander, a citizen of Ellis County since the year 1884, visited Madam Thompson and paid her fifty cents to tell his fortune; he also let her have a dollar of his own money and she "trebled" it and gave him back twenty-one dollars; he then gave her a "twenty" and she made ninety-one dollars out of it, which money the Madam kept. Later on Mr. Alexander went to the bank and drew therefrom $7,749.00 and gave same to Madam Thompson. That she then hand-sewed and made a belt out of canvas and placed the money therein, and placed such belt around Mr. Alexander's waist next to the skin and told him to go away and come back the next morning. He went back the next morning and Madam took the belt off and rubbed Alexander's back, and then rolled the belt up "and was going to double and triple it, and she threw a handkerchief over it and said, 'You take this home and keep it six days and come back.'" He went home, but on the third day he became frightened and looked in the belt and there was nothing but

paper in there, and he came and notified the officers. The appellant and his wife in the meantime had left the City of Waxahachie, and were about two months afterwards located by the Sheriff of Ellis County in Hood River, Oregon, 2118 miles from Waxahachie. It was shown that appellant and his wife were living at the place where this transaction took place, and left in the nighttime, leaving their paraphernalia, save their Buick car and trailer, the car showing about 3,000 miles on its speedometer at the time of their leaving, and when apprehended at Hood River, Oregon, they were possessed of a Buick car of different color, with the speedometer showing about 1,400 miles.

We are early met in the discussion of this matter with Art. 4 of the Penal Code, and Art. 24 of the Code of Criminal Procedure, wherein it is said, in substance, that where a statutory rule is not found governing any transaction, then that the rules of the common law should be applied thereto.

In this instance appellant and his wife are alleged to have entered into the substantive crime of a conspiracy to commit a felony. The contention then confronts us that under the common law a husband and wife are one, the entity of the wife upon marriage being merged with that of the husband, and, it being necessary under Art. 1622, P. C., that at least two persons enter into a positive agreement, there being but one person, according to the common law, the proof as to the conspiracy between two persons has failed.

It is admitted that in many of the states, in so far as this offense denounced in Art. 1622, P. C. is concerned, the husband and wife alone could not commit the substantive crime of a conspiracy to commit a felony. See 1 Bishop Criminal Law, Sec. 187; 15 Corpus Juris Secundum, p. 1060, and cases there cited. These cases are based upon the fact that in such states, in the absence of statutes, they are pure common law states, and to that extent are not in the same category of this State. Texas has a different history relative to the initial adoption of its laws relative to the status of a woman under coverture. Our martial laws sprang from the mother Spanish country, and much of such laws bear evidence of the influence cast upon the Texas law in regard to marital rights. Innovations, unknown to the common law, have been engrafted upon and early become a portion of our jurisprudence that are entirely foreign to the English common law. It is said in 23 Tex. Jur., p. 36:

"There is a wide distinction between the rule of the common law and that of the Spanish law upon the question of martial rights. The distinction is worth while, since we owe much to the civil law in this respect, and our statutes are patterned more nearly after that system.

"The Spanish civil law looked upon the marriage union as a species of partnership in which each might own and control a separate estate, as well as a common interest in a common fund called the ganancial goods. It accorded necessarily a great many rights and privileges to the wife that were unknown to the common law. The two systems were fundamentally opposed to each other."

In the early case of Barkley v. Dumke, 99 Texas 150, 87 S. W. 1147, Chief Justice Gaines held in derogation of the common law that a putative wife forfeited none of her marital rights by virture of the fact that she had in good faith entered into a marriage contract with a man already having a lawful living wife. This by virtue of the act of January 20, 1840, entitled:

" 'An Act to Adopt the Common Law of England, to Repeal Certain Mexican Laws, and to Regulate the Marital Rights of Parties' indicates that the rights of married persons were to be defined by statute, and not to be governed by the rules of common law."

Again he says: "The provisions of the act with reference to married persons are so inconsistent with the rules of the common law as to show an intention to maintain in reference to marital rights a radically different system. The fact that these provisions were incorporated in the act which adopted the common law is of itself significant of the purpose of the legislature not to apply the rules of the common law to the property rights of husband and wife."

Our different Constitutions from 1845 to 1876 evidenced their intention while mentioning the common law of England, nevertheless by their own self-contained statements evidence the facts that such was greatly liberalized relative to marital property rights, thus voiding the fiction of her being but a chattel, merged into the identity of her husband upon marriage. If the reason for the rule fails, then the rule should fail, and long since in Texas has it been held in Smith v. State, 48 Tex. Cr. R. 233, that a husband and wife can enter into the sub-

stantive crime of a conspiracy to commit a felony. The Smith Case, supra, has been cited with approval in the case of Dalton v. People, 189 Pac. 37, a Colorado case, although previously that State had by statute abrogated the common-law fiction of the oneness of husband and wife.

It has long since been held in Texas that a wife can conspire with her husband so that she could be charged as a principal in a crime by virtue of her conspiracy with him, and again if a third person be also named as a party to the crime of conspiracy, then all parties are punishable.

We think that in view of the inception of our adoption of the common law, mingled with the Spanish law not only by statutes but initiated by each succeeding Constitution, and "especially when viewed in the light of our advanced civilization, which in a great measure has emancipated the wife from the thralldom under which she formerly labored under the English system," as was said in the Smith case, supra, decided in 1905, and in a further view in the various constitutional and statutory enactments since the decision of that case, we think the mythical fiction of a wife losing her identity in that of her husband has long since been exploded, and she can not only enter into a conspiracy with him in the commission of a crime, but can be held for the substantive crime of a conspiracy with her spouse. Thus believing, we hold that both such spouses can be guilty of a violation of Art. 1622, P. C.

We are next confronted with the provisions of Arts. 32 and 33 of our Penal Code, which provide, in substance, in Art. 32, that when a woman commits an offense by command and persuasion of her husband her punishment shall never be death, but she shall only receive one-half of the punishment she would otherwise have received; and in Art. 33, holding in substance that it appears that a wife was instigated or aided in the commission of an offense by her husband, such husband shall be punished by death, in capital cases, and by double punishment in cases other than capital.

The wife not being on trial herein, we see no reason for appellant being exercised relative to her punishment at this time. If it be conceded that appellant aided and assisted his wife in the commission of this present offense, and therefore comes under the terms of Art. 33, supra, we do not see what ground of complaint he might here reasonably offer. The trial

court either 'overlooked such Art. 33, or thought the same did not apply herein, for he merely charged the jury relative to a penalty of not less than two nor more than five years, and did not charge a double penalty of not less than four nor more than ten years. The jury assessed the limit penalty given in the charge rather than the limit penalty should Art. 33, supra, have been given effect in the charge. It therefore seems that appellant probably received a penalty of five years less than could have been and possibly would have been given him had the terms of Art. 33 been complied with.

It is also noted that no complaint is made relative to the court's charge wherein it stated the penalty, and the punishment being within the radius of either penalty, the objection comes too late if made for the first time on appeal. Manning v. State, 46 Tex. Cr. R. 332, 81 S. W. 957.

There is but one bill of exceptions and that relates to the fact that the first witness, E. W. Alexander, was permitted to detail the transactions between himself and Betty Marks before the State had shown any concert of action of any kind between appellant and Betty Marks. The court's qualification shows that the witness was old and in poor health, and he allowed him to testify under the promise that testimony would later be produced showing appellant's connection with Betty Marks. We think under such circumstances it was a matter of small import as to what end of the case the State began, provided they finally produced both ends. We think such a matter was within the trial court's discretion. See Gregory v. State, 244 S. W. 615; 92 Tex. Cr. R. 574; Shannon v. State, 123 Tex. Cr. R. 521, 59 S. W. (2d) 142.

We have given the facts careful consideration and find that appellant and his wife came into Waxahachie, and appellant rented a house; that appellant rented furniture therefor; that he made arrangements for the lighting of the house, and purchased a sewing machine; that he placed the advertisement in the paper and paid therefor relative to his wife as a clairvoyant or fortune teller; that he was present at such house at different times, and was in charge thereof; that he owned an automobile and trailer, and that he and his wife remained in Waxahachie but a few days, and that he made arrangements for their early departure therefrom; that they left probably during the night, and were later located together more than

2,000 miles from Waxahachie; that although possessed of an automobile at Waxahachie which had been driven but a short distance, they were, at Hood River, possessed of an automobile which was practically new, leaving room for the inference that they had purchased a new car; that they left Waxahachie at an early date after Mr. Alexander had been duped by the wife, the fortune teller, under such circumstances as to suggest their flight,—all of these circumstances taken together suggest to us such cogency as to exclude every other reasonable hypothesis than that of the guilty of a conspiracy between themselves to do the very thing that they did do. Appellant performed his portion of the conspiracy by arranging the trap, and inviting the victim therein while his wife performed her portion thereof by her chicanery and stratagems, their purpose being the obtaining of their illgotten gains from one who had spent his long life in amassing them. These are but circumstances, and the trial court instructed the jury on circumstantial evidence. We quote from Vernon's Penal Code, Art. 1622, Vol. 3, p 321, note.

"It is not necessary, in order to establish a conspiracy to commit an offense, to prove that the persons charged came together, and actually agreed in terms to have that design and pursue it by common means. If it be proved that they pursued the same objects, often by the same means, one performing one part and another a different part of the same, so as to complete it with a view to the attainment of the same object, the jury will be justified in concluding that they were engaged in a conspiracy to effect that object, and such acting together would make all principal offenders, whether bodily present at the place of the offense or not, and until the full purpose and object of the conspiracy has been consummated. Smith v. State, 21 Cr. R. 107, 17 S. W. 552."

The opinion is expressed that no error is shown herein, and the judgment is affirmed.

HAWKINS, Presiding Judge (concurring in part).

I agree to the proposition that a husband and wife may be guilty of the substantive crime of conspiracy, but express some doubt as to the sufficiency of the evidence to show such conspiracy.

ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The unusual circumstances of this case with the question presented called for the most careful consideration of the facts by all members of the court on original submission. It is impossible to lay down a rule for the weighing of evidence in order to determine its sufficiency in each and every case. We can only agree on the principles which must be considered in weighing the evidence of the case, each one of which has its particular circumstances.

Anxious to adhere as nearly as is humanly possible to the holdings of the court in the past, we have again considered the evidence in the light of the authorities presented and have reached the conclusion that the record before us justifies the conclusion reached in the majority opinion. We think that there are other circumstances than those discussed in the original opinion which have been of value to the writer in reaching such conclusion. Because of this we re-state and add to such facts as are at this time considered potent.

Mr. Alexander first withdrew his money from the bank and placed it with the wife of appellant on April 2, 1941. This was Wednesday. She placed the money in a belt which she had made and put on him next to his body. He then went home with instructions to return the next day for further consideration, the nature of which is not given. Upon his return she examined the belt, rubbed his back, wrapped the belt supposed to contain the money up in a handkerchief, told him to take it home, keep it six days and come back. After three days he became uneasy and, upon unwrapping the belt, found that it did not contain the money and that it was not the same belt as the one which she had placed the money in the first instance. She might have switched the money on April 3rd, or it might never have been in the belt. At 11 o'clock at night on Thursday, April 3rd, appellant went to the home of the Singer Sewing Machine agent and woke him up and arranged to return the sewing machine which he had purchased. On the second day of the month he went to the shop of Ross Smith where he was having a tarpaulin made for a trailer and paid for the service. This was about 2 o'clock in the afternoon. In doing so he presented a twenty dollar bill. Smith could not change it. The defendant made an excuse for not wanting to go to town and did the

unusual thing of compensating Smith for his services in going to the bank to presént the bill and get change for it. Alexander had several twenty dollar bills in the money delivered to his wife. At that time appellant stated to Smith that he had "completed his job and was leaving." No explanation is given as to what that job was, but all the circumstances of the case indicate that the only thing that had been completed was the victimizing by his wife of Alexander.

Appellant went by the name of Thompson, but explained to people with whom he had transactions that his name was "M. Suntoure" or "J. Suntoure." He is now charged as "Nick Marks." The use of the three different names seems to have been a practice before, during and after the time of the transaction involved and may reasonably be considered as a circumstance to indicate guilty intention.

Criticism is made of some conclusions of fact in the original opinion which we do not believe is justified. The place of business was evidently a trap for Alexander or such other person or persons as might be enticed into it and induced to listen to the fanciful undertaking. Appellant was in and about the premises, usually entering from the rear and playing in an alley nearby with children while his wife operated in the front. As a background for her parlor there was a curtain of tapestry, usually an expensive commodity; in the living quarters were other things, some of which were rented and some appear to have belonged to them. The opinion said that they probably left at night. This is clearly indicated by his sewing machine transaction at 11 o'clock and the further fact that no one saw them there at any time thereafter. The flight, as set out in the original opinion, is a circumstance of guilt and the condition under which he left adds force to it. The valuable curtains and other things referred to were left in the building so that it appeared from the front that they were still transacting business. This could be interpreted in no other way than to have the purpose of creating the impression that they were still there and to keep down suspicion on the part of Alexander, or anyone else, should he return or be passing before the expiration of the six days which seem to have been arranged for the purpose of making the escape. Appellant left fully aware of all of this, thus immediately connecting himself with the transaction, and even beginning such arrangement on April 2nd, which was immediately after Alexander got the money from the bank and took

it to the wife and before the last part of her transaction on April 3rd. It is, therefore, shown that before she completed her swindle he was making his arrangements to take flight and escape arrest. It is clearly indicated that he was active on the last day of the transaction between his wife and Alexander with this in view; that he completed such arrangements as he' did make at 11 o'clock during the night and left some time thereafter, probably that night, as indicated in the state of the evidence, without returning rented furniture or carrying his own belongings which were in view of the street, all of which indicate his intention at the time of leaving without warning and to create the impression either that they were still there or would return.

The nature of the business may be considered at all times. The crime committed was through the means of claim to superior and mysterious power akin somewhat to the very representation made by appellant in a newspaper advertisement for which he was responsible.

It is a conspicuous fact in this case that no testimony was offered by appellant from any source to deny or explain away the circumstances which the evidence in the record has woven about him. It is far more than a mere suspicion. Having come to the conclusion that the jury was warranted in finding appellant guilty of the charge of conspiracy, the motion for rehearing is overruled.