George KAY, Appellant,

v.

The STATE of Texas, Appellee.

No. 45661.

Court of Criminal Appeals of Texas.

Feb. 7, 1973.

Philip S. Greene, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Bob Bennett, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

JACKSON, Commissioner.

This is the appeal of George Edward Kay, who was convicted by a jury of the felony offense of conspiracy to commit bookmaking with punishment assessed by the jury at five (5) years probation. Jack Strauss and Ronald Eugene Perry were tried with him on the same charge and were likewise convicted. Their cases are not before the Court.

◼ Appellant first complains because of the alleged unlawful search of a certain Pontiac automobile occupied by Strauss and Perry, but in which appellant was not riding, and the admission in evidence of the product of that search. We conclude that this search did not violate any right of appellant and that he has no standing to complain. Holcomb v. State, Tex.Cr.App., 484 S.W.2d 929; Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L. Ed.2d 176 (1969).

In the latter case, the Court said:

"The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Co-conspirators and codefendants have been accorded no special standing . . . . There is no necessity to exclude evidence against one defendant in order to protect the rights of another. No rights of the victim of an illegal search are at stake when the evidence is offered against some other party."

Appellant's first ground of error is overruled.

◼ Appellant next complains that the search warrant for the search of the Mercury automobile occupied by appellant was invalid and the fruits of the search were improperly admitted in evidence.

The warrant recited that the property to be searched is a "1968 or 1969 Mercury automobile, dark in color, bearing Texas license RHG 243, probably driven by George Edward Kay," containing gambling paraphernalia which "will appear in the 6800 block on Main at the intersection of Holcomb on the parking lot northwest corner," in Harris County, Texas.

Affiants in the affidavit for search warrant recited that they received on September 15, 1969, information from a reliable informer, who had before given them true information, that appellant and Perry, alleged to be co-conspirators, were overheard discussing football cards regarding pushing the cards and also heard them talking about having a lot of their players at home, stating that they were afraid to carry their list with them as they might be ar-

rested, thereby exposing their players list to the arresting officers.

Affiants further recite that they received additional information from a second reliable informer on or about September 20, 1969, that three men known as gamblers by Houston Vice Squad Officers were running and pushing football cards in this area and that they were having them printed at some print shop on Holcomb Blvd., near Main, in this city. The informer went on to name the three men as Jack Strauss, Pete Kay and Ronald Perry.

The affidavit also contains these additional recitals:

"A surveillance was set up on Ronald Eugene Perry, HPD #165124 at his home 831 Curtin. Subject was followed for several days and on October 7, 1969, the subject was followed to a print shop known as Kwik-Copy, 6800 Main at the intersection of Holcomb Blvd. Arriving at approximately 9:20 P.M.; after the subjects entered the shop officers using binoculars could see several men in the shop discussing and looking at several pieces of paper in their possession. Officers could see that one of the papers had written on it what appeared to be a line sheet written in long hand. After looking at these papers and studying them one of the men presumed to be the printer then began to make copies on a printing machine and then as the subjects examined the copies from this machine the officers were able to recognize the copies as being football cards having the color of white bearing black letters. Officers were approximately one hundred and fifty feet from the print shop using ten power binoculars. The front portion of the print shop is all glass except the frame work of the windows and doors.

"At approximately 11 P.M. Ronald Perry was observed leaving the print shop carrying a package approximately 7 inches long, 6 inches wide and 2 inches thick where he got into his automobile, 1966 Oldsmobile, blue, Texas license NXP 723 where he was followed to his home at 831 Curtin.

"At approximately 12:30 A.M. a second subject left the print shop carrying a package approximately 1 foot square. This subject had already been recognized in the print shop at the arrival time of Ronald Perry as being George Edward Kay, known as Pete Kay as mentioned earlier in this affidavit. HPD #145219. This subject was followed into the Game Room (Lounge), 3701 Kirby. This subject was driving 1969 Mercury, 69 Texas license RNG 243.

"A third subject unknown to the officers was seen leaving the print shop the same time that Pete Kay left. This subject was driving a 69 Chevrolet, red, 69 Texas license PST 597 who also went to the Game Room as mentioned above. Both of these last mentioned automobiles was also carrying passengers, identify (sic) unknown. At approximately 1:45 A.M., the subject in the red Chevrolet mentioned above left the lounge and was followed to 3262 Branard #3 where the subject apparently lives as he did not leave there for a period of at least two hours. This license number is listed to a James A. Scott and checking with the above address on Branard, the name Scott appears on the apartment 3 mail box.

"At the same mentioned time 1:45 A. M. Pete Kay was observed leaving the Game Room where he was followed to Huntsville, Texas driving the above within described Mercury. The Mercury also bearing two passengers was followed to an apartment located at 2900 Old Main, Huntsville, Texas where the three subjects went into the apartment carrying the above within described one foot square package.

"All of the packages referred to in this affidavit contained football cards as described in this affidavit."

Officer J. E. Harrell, who found the gambling paraphernalia in appellant's Mercury automobile, had previously participated in the surveillances on October 7 and October 13, and fully testified to his observations on both occasions, as set out hereafter in this opinion.

Testimony showed that there were a number of officers working in this matter, and by the interchange of information, what was known to one was known to all.

In addition, Officers Ripley and Belcher testified that after their observations at the Kwik-Copy Print Shop on October 13, 1969, they saw appellant go to his automobile (the Mercury mentioned in the search warrant) with two cardboard boxes under his arm, and Strauss go to his car (the Pontiac) with three boxes. The two cars then drove on North Main Street to the parking lot at Bill Williams in the 6500 block, Strauss and Perry in the lead and appellant alone in his car following just behind.

J. E. Harrell of the Vice Division of the Houston Police Department testified: "I stopped Pete [the appellant] and Pete got out of his car and I identified myself as a peace officer and I could see two boxes laying on the seat of his car and one of them was open and it contained football cards."

Inasmuch as we conclude that the officers had probable cause to search the Mercury automobile without a search warrant, it will not be necessary for us to pass on the validity of the warrant.

The applicable law goes back to Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, holding that an automobile may be searched without warrant if officers had probable cause to believe it had contraband in it. Gomez v. State, Tex.Cr.App., 470 S.W.2d 871; Kwant v. State, Tex.Cr.App., 472 S.W.2d 781; Mottu v. State, Tex.Cr.App., 472 S.W.2d 522, and cases therein cited; Boatright v. State, Tex.Cr.App., 472 S.W.2d 765; Chambers v.

Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419; Thompson v. State, Tex.Cr. App., 447 S.W.2d 175.

Appellant's second ground of error is overruled.

▪ Thirdly, the appellant raises the contention that the evidence is not sufficient to support the conviction. This was a case of circumstantial evidence, and the court so charged.

The evidence was voluminous, but we will state only the salient facts in the record.

Officer J. E. Harrell of the Houston Police Department Vice Squad knows what football cards are and explained them. The first football card offered was admitted into evidence with objection waived. Thereafter, the officer without objection explained further the method of using football cards for betting on football games, and then testified to his knowledge of Jack Strauss, George Kay, appellant herein, also known as Pete Kay, and Ronald Perry, also known as Pods. He testified that he saw the three of them together at the Kwik-Copy Print Shop on October 7, 1969. He saw appellant Pete Kay bring two young adult males there with him. They apparently were college boys. The lights were on inside the glass front shop and the officer could see what was happening inside. He was only fifty or sixty feet away. The three alleged conspirators remained there with the two college boys for two and one-half to three hours.

On October 13, 1969, immediately before the arrest was made, this same officer again saw these three men at the Kwik-Copy Shop for two to two and one-half hours. Again, he saw them in similar activities preparing football cards. Photographs were taken of them together at this location at that time, which photographs were admitted in evidence without objection.

Officer B. J. Ripley also engaged in this surveillance and he used binoculars. On October 7, 1969, he saw Kay and Perry in-

side the store and could tell they were looking at a line sheet and the football cards because he was using binoculars. The line sheet and three boxes of football cards were seized from Strauss' car, the Pontiac, and were offered in evidence.

Lt. J. B. Belcher, who is in charge of the Houston Vice Squad, testified that on the night of October 13, 1969, just before the arrests were made, he personally participated in surveillance at the Kwik-Copy Shop. It looked like the three were having a conversation. A fourth individual, the operator of the shop, was busy operating the machine. Appellant Kay participated by operating the lever of a cutting machine. Thereafter Perry and Strauss came out and walked to a telephone and used it for ten or fifteen minutes after which all three left. Kay took two cardboard boxes with cards and Strauss and Perry took three cardboard boxes of cards.

The witness James Scott testified that he had known George Edward Kay most all of his life. About September 22 or 23, he visited him at Huntsville for the purpose of getting some football cards from him. He said football cards were cards to bet on football games with. He said he wanted to get these cards to bet personally on football games through the use of these cards, both for himself and some of his friends. Kay gave him some little yellow cards about six inches long; he had got ten white cards from him but it depended on which week the cards were for. He said he got fifteen or twenty cards and made an arrangement with Kay whereby he would distribute some of the cards for him. He said he brought these cards to Houston and participated with him in the profits of that venture. He said he went with Kay to the Kwik-Copy Shop on Main Street in Houston in the month of October. He went there to pick up some football cards. When he went to that place there were Pete Kay, Ronnie Perry and two college boys and the printer. The college boys were from Sam Houston State in Huntsville. He got some of the cards at the print shop on that occasion and took them home with him and placed bets on them. He turned Kay's part of the money over to Kay.

This witness testified that Pete Kay's cards and Ronnie Perry's cards had different names; Goalpost being Kay's cards and Kickoff being Perry's cards, but these cards were all printed together and were otherwise the same except for the name. They were prepared together in cooperation by Kay and by Perry, the evidence clearly shows.

Witness Boyker, operator of the Kwik-Copy Shop, testified that Kay and Perry were at his shop together and left together with him and went to somebody's house and then came back to his place of business to complete the printing job in October, 1969. He testified that they brought him the document from which he printed the football cards in October, 1969. The reason that they went to this other person's house was because possibly there was a mistake in this document. He further testified that he was paid by one of the defendants or both of them; that is, either Kay or Perry or both as far as he remembered.

The search of the appellant's Mercury automobile on October 13 resulted in finding two boxes of printed football cards; one of said boxes contained 603 printed cards with no markings on them and 11 cards identical to those without markings which did have some markings or writing on them. Photostatic copies of those 11 cards, together with the printed cards with no markings, were admitted in evidence by the court. The search of the automobile occupied by Strauss and Perry revealed the presence of 319 printed cards and photostatic copies of them were admitted in evidence by the court. The car occupied by Strauss and Perry was just ahead of the car occupied by appellant when these searches occurred. State's exhibit number 8 shows the cards found in Kay's car were Goalpost cards, and State's exhibit number 9, the cards found in the automobile occu-

pied by Strauss and Perry, were also Goal-post cards. Thus, the exhibits themselves show that appellant and Perry and Strauss were taking for use the identical cards named Goalpost.

Also it was shown the conspirators communicated with each other by telephone at times pertinent to the distribution of these cards.

Circumstantial evidence is sufficient to prove conspiracy. 12 Tex.Jur.2d, Conspiracy, § 8, at notes 6 and 7; 5 Branch's 2d, § 2896; Roberts v. State, Tex.Cr.App., 375 S.W.2d 303; Nisbet v. State, 170 Tex.Cr. R. 1, 336 S.W.2d 142; Price v. State, Tex.Cr.App., 410 S.W.2d 778; Caldarera v. State, 122 Tex.Cr.R. 46, 53 S.W.2d 485. Here, as in the Caldarera case, several people were found working together in the illegal operation. The claim is made in both Caldarera and in the instant case that there was not sufficient evidence to prove a positive agreement. Here, as in Caldarera, the action in concert is shown and is sufficient. Here the offense is conspiracy to commit bookmaking by the distribution or pushing football cards for use in betting on football games. In Caldarera, supra, it was bootlegging.

In Marks v. State, 144 Tex.Cr.R. 509, 164 S.W.2d 690, 693, the Court pointed out that the circumstances did not show, and it was not necessary to show, that the persons charged came together and actually agreed in terms to have the conspiracy designed and pursue it by common means. It is sufficient to show that they pursued the same objects, often by the same means, one performing one and another a different part of the same, so as to complete it with a view to the attainment of the same object.

Clearly in the case at bar there was positive evidence that these three men, Kay, Perry and Strauss, came together at the Kwik-Copy Shop on two separate occasions and worked for two or three hours together preparing and having printed football cards which they then divided up and took away. There is evidence from witness Scott that he distributed football cards for Kay in Houston and turned over part of the proceeds therefrom to Kay. He went to the Kwik-Copy Shop to get his tickets from Kay on October 7 and he took those cards home and placed bets on them and turned over Kay's part of the money to Kay.

While we have not undertaken to detail the entire evidence, we find upon a careful review of the same that it is sufficient to support the verdict of the jury.

Appellant's third ground of error is overruled.

Finding no reversible error in the record, the judgment is affirmed.

Opinion approved by the Court.

ODOM, J., not participating.