## GEORGE LONG v. THE STATE.

### No. 1835. Decided October 19, 1898.

**1. Evidence—Collateral and Contemporaneous Crimes.**

As a general rule evidence of collateral crimes is inadmissible. An exception to the rule is where such collateral contemporaneous offenses form part of the res gestae and serve to identify the offense or connect the defendant therewith. And collateral crimes, not contemporaneous, may in a proper case be admitted to show intent or where they show system.

**2. Same—System.**

Where the object is to show system, subsequent as well as prior offenses when tending to establish identity or intent can be put in evidence.

**3. Same.**

But simply because an offense has been committed by a defendant in the same manner as the offense charged may have been committed, does not constitute this separate offense a system. System is not established by the fact that two distinct crimes were committed in the same way.

**4. Same—Accomplice Testimony—Corroboration.**

An accomplice can not be corroborated by inadmissible evidence.

APPEAL from the District Court of Tarrant. Tried below before Hon. IRBY DUNKLIN.

Appeal from a conviction for burglary; penalty, two years imprisonment in the penitentiary.

The following statement, which is substantially correct, is taken from the brief of counsel for appellant:

William Price left his home, near Keller, Tarrant County, Texas, on August 1, 1897, went to Cheyenne, I. T., and returned on August 18th. Some time during his absence wheat was taken from a granary on his place. His wife remained in the neighborhood when he went to the territory. No one saw the wheat taken, or after it was taken, or testifies to any fact connected with the taking, save the accomplice, John Weaver, who says that he, defendant, and one Stateham went out to the Price place, on the night of August 4th, raised the slot of the spout of the granary, let the wheat run out (one of them run his arm up the spout once when the wheat was not running to suit them), brought the wheat to Fort Worth, sold it, and divided the proceeds. The court, over objection, permitted Weaver to testify that he and defendant, on the night of July 26, 1897, burglarized the house of one Frank Lehman, and also that he (defendant) and Stateham, on the night of August 8th, burglarized the house of John Burgess; and also that on this night, August 4th, as they were going out to the Price place, defendant told him that

on the night of August 1st he (defendant) and Stateham had burglar-
ized the same place to which they were going.

L. T. Weaver, father of the accomplice, testified to hiring to defend-
ant and Stateham, on August 1st, his wagon, "for a week."

Burgess, Hoffman, McAnally, and Martin testified to facts which
tended to connect the defendant with the Burgess transaction, of date of
August 8th.

*O. S. Lattimore,* for appellant.—The court below let in evidence of
different transactions than the one for which defendant was on trial, and
told the jury that they could only consider such evidence as tending to
connect the defendant with the case on trial, or rather, with the offense
for which he was then being tried.  The evidence was for the purpose of
corroborating the accomplice, on whose evidence mainly rests the con-
viction.  I unhesitatingly affirm, that unless the said accomplice can be
corroborated by such evidence of other transactions, there is nothing in
this record which will corroborate him.

The first ground of defendant's motion for a new trial is the insuffi-
ciency of the evidence to support a verdict, for the reasons there set out,
and to that I ask the court's earnest attention for a moment.

Defendant says that the evidence fails to sustain the allegations of
ownership and possession, and fails to show a burglary of the house, but
chiefly, defendant says that there is no corroboration of the accomplice.
Authorities would be useless to establish before this court the proposi-
tion that, before there can be a legal conviction on the testimony of an
accomplice, there must be other evidence in the case, which of itself and
independent of the accomplice testimony, tends directly and immediately
to connect the defendant with the commission of the act charged against
him.  Let us see.  Aside from the statement of L. T. Weaver that de-
fendant let him have his watch about August 4th, there is not a syllable
in this record which shows aught of the defendant from August 1st till
August 8th.  Defendant hired L. T. Weaver's wagon on August 1st, for
what does not appear, save that Weaver says that defendant told him
that he wanted to take some girls out fishing.  Weaver got his wagon
back,—when, does not appear.  If I may leave out the testimony of John
Weaver, the confessed accomplice, keeping in that of old man Weaver,
who, according to all the evidence, furnished the conveyance and shared
in the profits, and was really one of the guiltiest of the parties, and sum-
marize, my resume of the evidence would be as follows: Price missed
some of his wheat, on August 18th, which he had left in his granary on
August 1st.  Burgess lost some of his wheat on August 8th, followed the
wagon tracks to town, and found some of his wheat in an old wagon at
the wagon yard.  Martin says that this old wagon was left there by some
one, and was looked at and measured by Burgess.  McAnally says that
he bought wheat from defendant and John Weaver, on the morning of
August 9th, and that he afterwards saw the wagon that they had the
wheat in at the wagon yard of Mr. Martin.  Mr. Hoffman says that de-

fendant, Stateham, and Weaver came by his place on the evening of August 8th, going north, with an empty wagon, and that they came back the next morning with the wagon loaded with some kind of grain. L. T. Weaver says that he hired his wagon to defendant and his son, John Weaver, on July 26th, and that on August 1st he hired it to defendant and Statcham for a week; that he afterwards got it back down near the mill, and that it had wheat in it, and had a new wheel on it, and that this new wheel was afterwards claimed and taken away by Mr. Prior. That about August 4th defendant gave him $2 and his watch. Mrs. L. T. Weaver says that she remembered that defendant and Stateham came down to her house in the latter part of July and hired her husband's wagon, and she did not see any of them till August 9th, when Stateham came to her house. L. T. Weaver further says, that when he asked his son about the wheat in the wagon he told him that they had taken some girls out to a thrasher.

The law says that the accomplice must be corroborated, and it is not sufficient that he be corroborated in immaterial matters, but the corroboration must be as to a material matter, and the corroborating evidence must of itself, and without the aid of the accomplice's testimony, tend in some degree to connect the defendant with the offense for which he is on trial.

Now, in the name of fairness and right, is there a single thing in the above which tends to connect this man with the burglary of Price's house on August 4th? Was Price's house burglarized on August 4th? Was it burglarized prior to the 17th of August? What wagon was used in the burglary, if any, to convey the wheat away?

The rule laid down by Judge White in the Roach Case, 8 Texas Criminal Appeals, 492, that in passing on the sufficiency of the evidence in a case of this kind it would be proper to leave out the evidence of the accomplice, and examine and see if there was any evidence left tending to connect the defendant, is, I believe, still a good one to follow. In my opinion, there is no such evidence in this case. But, says the State, the evidence of other transactions tends to connect the defendant with the offense for which he is being here tried, and the learned judge before whom this case was tried below, in his explanation attached to one of the bills of exception, number 2, I believe, says that "without this evidence the defendant can not legally be convicted," the only difference between Judge Dunklin and myself being, that in my humble opinion the defendant can not ever be legally convicted with this evidence.

Is the State's position, that proof of the commission of one burglary by a man will tend to connect him with the commission of another, a correct one, and ergo, will such proof supply the necessary corroboration in order to sustain a conviction on the testimony of an accomplice? If so, the conviction is warranted by the evidence; if not, the conviction is unwarranted.

But, says the State, we prove system. To this I answer that there is no proof of system, unless the statement of John Weaver, the accom-

plice, that defendant told him, on the night that this burglary is alleged
to have been committed, that they intended, after taking all the wheat
in reach of Fort Worth, to go up to the Panhandle and there steal wheat,
constitutes system. Surely, proof that wheat was stolen by some one
from Burgess on August 8th, and that wheat was stolen from Price some
time between the 1st and the 18th of August, by whom we can get no
idea, except from the accomplice Weaver, and that Weaver says that
Lehman lost some wheat about July 26th, will not justify an inference
of system. Lehman does not say that he lost any wheat at any time. He
does not testify. Price does not know when he lost his wheat, if at all.

I say that when this man is on trial for the burglary of Price's gran-
ary, alleged to have been done about August 4th, and the State is per-
mitted to go into the details and prove the burglary by this defendant
and John Weaver of the granary of Burgess, on August 8th, the irresist-
ible effect is to make the jury conclude that they are trying a man who is
a thief, and that alone is responsible for the conviction in this case. Does
proof that A commits a burglary on the 1st tend to prove that he com-
mitted another one on the 10th, or the 5th, or the 20th? And if such
proof will have that tendency when the transactions are but four days
apart, will it not have the same tendency, with slightly decreased weight,
when the transactions are two weeks apart, and so on, ad nauseam?

A word about this doctrine of system, because that is the rock on which
my client's bark was wrecked in the court below. As far as I am able to
learn, this doctrine was born into our own family of adjudications about
the year 1887, in the forgery case of Hennessy v. The State, 23 Texas
Criminal Appeals, 355, when, for the purpose of showing the intent of the
defendant in a case wherein the act alleged to constitute the offense could
have been easily done without criminal intent, Judge Walker, on the trial
below, permitted evidence of other similar acts done by the defendant.
Judge Willson of your honorable court, in his opinion, on page 354, says:
"It was the object of the prosecution, by this collateral evidence, to show
a system of fraudulent acts of the defendant to obtain money from the
State to which he was not entitled, and thus to show that in the alteration
of the particular instrument he was actuated by such fraudulent intent."
He then quotes from Wharton's Criminal Evidence, section 38, to show
that when the object is to establish system, subsequent as well as prior
offenses may be shown, and that the time of the offenses is immaterial,
and that the more of them there are the stronger will be the deduction of
the fact desired. But on the top of page 355, Judge Willson says that
the court below plainly and emphatically instructed the jury that it, i. e.,
such evidence, could be considered but for one purpose only, and that
was for the purpose of throwing light on the defendant's intent in mak-
ing the alteration charged, if he did make the alteration, and that said
testimony "did not and would not be considered as affecting the ques-
tion, in any way, whether he altered the instrument set out in the indict-
ment." I believe this to be the law, and when property taken is claimed
to have been taken under a claim of right, or under a mistake of fact, or

without fraudulent intent, then will evidence of similar though independent transactions of the defendant become legitimate, but even then the doctrine is fraught with much of danger, for a defendant under this rule must be prepared with his evidence in every case to defend himself against everything with which he has ever been charged, and on the trial of a man for one offense, he may be really tried for half a dozen, and if he is convicted of one, and there is some rascal in trouble who is willing, in order to get out himself, to swear that he and the defendant committed another offense that was committed a few days prior to the one for which the defendant was convicted, then good-by defendant, for the jury will clearly see that they are trying a man who is a thief, and the learned judge trying the case will tell the jury that they can consider the evidence of the other transaction for but one purpose, and that is to connect the defendant with the offense for which he is being tried, and the learned county attorney will tell the jury that the judge would not let in evidence unless it had some bearing on the case, and that having let in evidence of these other transactions, and told them in the charge that they could not consider it for any other purpose than as tending to connect the defendant with the offense for which he is on trial, therefore it must tend to connect him with that offense, and a man might be convicted of every offense which has been committed in Fort Worth for a year past, the only thing necessary being full proof of one transaction, and a man who would swear that at intervals he and the defendant committed other offenses. Wouldn't that be a spectacle for the gods? Prove that A and B were concerned in a burglary on January 1st, and have proof abundant. Charge A with a burglary on January 5th, 10th, 15th, 21st, 30th, and so on, and let B, claiming himself to be an accomplice, who, as Judge Clark says in the Robertson Case (9 Texas Criminal Appeals, 209), is branded by the law as corrupt and polluted, get on the stand and tell how the thing was done on the occasion of the 5th, and then the full proof is put in of the offense committed on the 1st, and the learned county attorney admits to the jury that there must be corroborating evidence tending to connect the defendant with the offense on trial, but he tells them to watch the charge of the court and see if the court does not tell them that they can consider this evidence of other offenses as tending to connect, and the learned court does tell them so, and the defendant is convicted of the offense of date the 5th, and the same process is repeated for the act of date the 10th, and the 15th, and so on, and a man in a town like Fort Worth, or any of our larger towns, where there are burglaries committed every week, could be convicted for an offense for every week for the full period of limitation.

I know that there have been some cases since the Hennessy Case which have gone to quite lengths, in every instance referring to that case, and citing it as in support of the propositions announced. In the Morgan Case, 31 Texas Criminal Reports, which was a case wherein Morgan admitted his possession of the alleged stolen cattle, and of others at the same time claimed by the defendant, if stolen at all, to have been stolen

at different times and places, but claimed an honest acquisition of the same, Judge Davidson says, page 9: "We are of opinion that the testimony should have been admitted, as it tended to prove the fraudulent intent of the defendant with respect to receiving the one head of cattle named in the indictment, and with knowledge on his part that when he received said yearling that it was stolen property." He repeats the same statement a little further on in the opinion, substantially. I do not object to this, but Judge Davidson says: "It also tended to show a systematic plan on the defendant's part to commit the crime charged," citing the Hennessy Case. Now this statement, in the absence of some qualification as to the effect and purpose of evidence tending to show system, such as is given in the Hennessy Case, might, it seems to me, create confusion and lead some to think that any evidence which could be said to tend to show system would be admissible in any kind of a case. Such I do not understand to be the intent of Judge Davidson, at least if evidence of what he has said in other cases is admissible as shedding light on his intent in this one. Again, in the Nixon Case, 31 Texas Criminal Reports, 207, a case which Judge Davidson reverses because of the error of the lower court in admitting on a trial for the theft of a horse, committed on March 29th, evidence of the theft of another one on the 3d of the same month, he refers to the Hennessy and Morgan Cases, supra, and makes the same statement as last above set out, to which I most earnestly object, unless accompanied by the qualifying statement that "proof of these separate offenses can not be considered as affecting the question as to whether or not the defendant did the act charged against him in the indictment on trial."

In Kelly's Case, 31 Texas Criminal Appeals, 211, a case wherein the defendant was found in possession of various articles of property, which had shortly theretofore been stolen from different houses and at different times, all of which articles he disclaimed, and said that he had received them from one Johnson under a contract to carry them to Weatherford, Judge Davidson, speaking of this evidence of these other offenses, says: "If the evidence tends to establish the res gestae, or to prove a relative or competent fact or circumstance connecting the defendant with the crime charged, or to explain the intent of the defendant in his connection with the property he is charged with stealing, or to make out his guilt by circumstances, it is competent for the State to prove such extraneous crimes," citing the Hennessy Case and the later ones above referred to, and then a little further on he says: "It was competent, relevant, and pertinent to the issue, and was admissible as a fact going to disprove the reasonableness and probable truth of the defendant's explanation of his possession of the alleged stolen property, and to controvert his statement that he got the goods from Johnson."

In Mason's Case, 31 Texas Criminal Reports, 306, Judge Simkins, for whom as an ex-judge of this court I have the highest respect, says: "It is a well settled rule that where there are disconnected, independent felonies, you can not give evidence of one to prove another, even though

they be of the same character of offenses," citing the Nixon Case, *supra*; but he says, "there is an exception as well established as the rule itself, that where the criminal acts are connected as part of a systematic plan, evidence of any of them is admissible to show guilty knowledge, and the time when the collateral inculpatory acts occurred is immaterial, provided they are close enough to indicate that they are part of a system."

Now, I do not know just what Judge Simkins means when he says "guilty knowledge" in the above, but I take it that he means something similar to what was said by Judge Willson in the Hennessy Case. Is there any question of guilty knowledge in the case at bar? Defendant expressly to the court below, as appears from his bill of exceptions number 2, stated that he did not set up any claim of mistake of fact or claim of right or of innocent intent, provided he was shown to have done the thing charged against him. And the court below could not have admitted the evidence for the purpose of affecting the question of guilty knowledge, for he expressly, in paragraph 12 of said charge, limits the jury's consideration of such evidence to the one purpose of connecting the defendant with the offense for which he was on trial.

The Dawson Case, 32 Texas Criminal Reports, 535, goes further than any of the other cases, and seems to me to be getting on rather dangerous ground. In that case, evidence of offenses prior to the one for which the defendant was on trial, and extending back for two or three months, was admitted. Judge Simkins says of that evidence: "There is quite a difference between separate and independent crimes, though of like character, and a regular system of crime, organized and carried on by a band of criminals, as in the case at bar," and in support of that proposition he cites the Hennessy Case, the Nixon Case, and Mason's Case, *supra*. Thus we see how far the doctrine of the Henessy Case has gotten away from its original moorings. But I really think that the learned judge did not need to make such a broad statement in order to cover the case he has under consideration, and that if necessary the admission of such evidence in that case could be very satisfactorily explained, because, as he says, the defendant was found in possession of property which was the fruits of most if not all of the burglaries, of which evidence was permitted, and it might have been admitted in order to show the defendant's intent with respect to that property, as was done in the Morgan Case, *supra*, but Judge Simkins says, in the latter part of his opinion: "The evidence as to the other robberies was controlled by the court in its charge. The object of admitting evidence of other stolen property was clearly explained, and the jury were duly cautioned that in passing upon defendant's guilt or innocence they were limited to the burglary of car No. 4002, and defendant's connection therewith." What the explanation of the court to the jury was, I do not know, and how the court controlled the evidence of the other crimes, in his charge, I do not know, but I am satisfied that he did not tell them that they could consider such evidence for the single purpose of tending to connect the defendant with the

offense for which he was on trial, which I conceive to be a violation of every holding of this or any other court on that subject.

Each of these cases which I have been discussing comes, in one way or another, under the rule laid down in White's Annotated Penal Code, section 1505, subdivision 6, but the case which I am trying to present to this court is very different from any of these. Defendant was arrested on August 9, 1897, and no fruits of any crime were found on him. What possible connection could there be between the burglary of Lehman's granary, on July 26th, as testified to solely by the accomplice Weaver, and the burglary of Price's granary on August 4th? This is the August 4th burglary for which defendant is on trial.. What connection can there be between the case on trial and the Burgess case, which occurred on the 8th? Suppose when the State on this trial began to put in evidence of the Burgess burglary, the defendant had arisen and stated to the jury that he was willing to plead guilty to the Burgess case, would his plea of guilty to the case of August 8th, thereby doing away with the necessity of the evidence of Hoffman, Martin, McAnally, and Burgess, have been any corroboration of the accomplice, when he tries to connect the defendant with the case at bar?

On the trial of this defendant for the Burgess case, on August 8th, I state frankly that the State has a good case, but in this one, and the one for the Lehman burglary, if in fact Lehman lost any wheat, there is an utter absence of any testimony tending to connect the defendant with those cases, unless, as the court below tells the jury, evidence of other transactions than the one on trial tends to connect the defendant.

In Kelly's Case, 18 Texas Criminal Appeals, 262, a case which Judge Hurt reverses, because proof of the theft of other animals, which were found in defendant's possession at the same time as the one for the theft of which he was being tried, was admitted, after a review of a great many authorities, and quoting with approval the holding of Judge Moore in the Galbraith Case, 41 Texas, 567, of which case Judge Hurt himself says: "The fact that Galbraith had sold to Taylor a hide from the animal of Russel at the same time he sold the Myers hide, and the further fact that the defendant had stolen the Russel animal or hide, were held not to serve in any way to identify the thing stolen, or to connect the defendant with the theft of the Myers bull, nor do these facts form links in a chain of circumstances proving defendant's guilt of the theft charged." Judge Hurt's holding in the Kelly Case is, that proof of the theft of the other animals found in defendant's possession would lead us to somewhat of this conclusion: the defendant stole eight or ten other stock, therefore, he stole the gotch-eared filly of Mrs. Squires.

In the Williams Case, 24 Texas Criminal Appeals, 412, that case is reversed, for no other error than the admission of evidence showing the theft of other property which was found in the defendant's possession at the time he was arrested. The English Case, 29 Texas Criminal Appeals, 174, was reversed for the same error. The Buck Case, 38 South-

western Reporter, 772, was reversed by Judge Henderson because of the admission of evidence of another theft by defendant ten days prior to the one on trial.

*W. W. Walling* and *Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of burglary, and his punishment assessed at confinement in the penitentiary for a term of two years; hence this appeal.

There is only one question in the case which requires notice, to wit, the admissibility of evidence of other burglaries committed about the same time and in the same neighborhood in which the burglary for which defendant was tried is claimed to have been committed. This evidence was admitted by the court over the objections of appellant. The court, in his explanation to the bill, shows that same was admitted for the purpose of connecting defendant with the commission of the offense charged, and he so instructed the jury, basing the admission of the testimony on the ground that the proof showed a system. Appellant, by his counsel, O. S. Lattimore, has filed an able brief, reviewing the authorities on the subject of the admission of this character of testimony; and he insists that, even where proof of other crimes is admitted, such testimony has been admitted solely for the purpose of shedding light on the intent with which the defendant may have committed the offense for which he is being tried; and he furthermore claims that this was the rule laid down in the Hennessy Case, 23 Texas Criminal Appeals, 340, and that expressions found in cases decided since that time, and purporting to follow it, carrying the rule beyond this, are dicta, or are not supported by the authorities, and not in consonance with correct legal principle.

The general rule on this subject is that evidence of collateral crimes is not admissible. This rule, however, is subject to exceptions; among them, evidence of contemporaneous crimes may be admitted, where such collateral offenses form part of the res gestae of the offense charged, and serve to identify same or to connect defendant therewith. See Whart. Crim. Ev. sec. 31. And collateral crimes, though not contemporaneous, may be admitted in a proper case to show the intent with which the accused may have committed the act charged. And this was the rule laid down in the Hennessy Case, supra. And it has also been said that evidence of collateral offenses may be proven where such offenses form part of a system or part of the transaction in which the act under investigation is involved; and in such a case the evidence may be used to connect or identify the accused with the transaction under investigation. We do not understand by this that the authorities mean that the distinct offenses in nowise connected and not involved in the same transaction charged against the accused may be proven in order to connect him with said charge. Such was the rule laid down in what is known as the Mollie

39th Crim. Rep.—35

McGuire Cases.   See Carroll v. Com. 84 Pa. St., 107.   Mr. Wharton, in his work on Evidence, says: "In order to prove purpose on defendant's part, system is relevant; and, in order to prove system, isolated crimes are admissible, from which system may be inferred.   The reason for the rule in this and similar cases is that, when once a system is proven, each particular part of the system may be explained by the other parts which go to make up the whole."   Section 32.   "When the object is to show system, subsequent as well as prior offenses, when tending to establish identity or intent, can be put in evidence.   The question is one of induction, and the larger the number of consistent facts the more complete the induction is.   The time of the collateral inculpatory facts is immaetrial, provided they be close enough together to indicate that they are a part of a system."   Section 38.

Under no rule of evidence with which we are familiar was the testimony in this case admissible.   The system claimed by the State was to the effect that, a few days prior to the alleged offense, certain wheat in the neighborhood had been stolen out of a bin, and carried to Fort Worth, by some one, and sold; and also that a few days after the alleged theft, certain wheat in the same neighborhood was stolen from a bin, loaded on a wagon, carried to Fort Worth, and sold.   With the first offense, there is no testimony outside of the confessed accomplice tending to connect appellant with the same.   With the latter offense, it may be conceded that there is testimony tending to connect defendant with said offense.   The State insisted that these transactions formed a part of a system, and were admissible as independent evidence tending to connect defendant with the offense charged, and so corroborate the accomplice. Now, we hold that because an offense has been committed by a defendant in the same manner that the offense charged may have been committed does not constitute this separate offense a part of a system.   The fact that two distinct crimes may have been committed in the same way does not, in our opinion, constitute a system, as meant by the authorities treating of this subject.   If these independent acts constituted a system, and if proof of such collateral offenses could be offered to connect a defendant with the offense charged, because such other offenses were likely perpetrated in the same way as the one for which he was being tried, then, in every case in which appellant was shown to have committed similar offenses, proof of such offenses could be made in order to identify or connect him with the case for which he was on trial.   To illustrate:  Suppose A is on trial for the theft of a horse, and the proof should show that it was taken in a particular manner, but there was no proof identifying or connecting A with the theft of said horse; then, in order to connect him with such offense, and to show that he was the guilty party, if the contention of the State be correct, if he had been convicted of the theft of other horses committed in a similar manner, proof of such collateral crimes could be introduced in evidence, as testimony tending to show that he was guilty of the offense charged against him. This we do not understand to be the rule; but this was exactly what was

done in this case,—that is, proof of independent offenses was introduced by the State as testimony tending to connect defendant with the main offense, for the purpose of corroborating the accomplice's evidence. There was no proof outside of said collateral offenses that tended to connect defendant with the offense charged, or to corroborate the accomplice. The testimony being inadmissible, the accomplice could not be corroborated in this manner. We hold that the court erred in admitting said evidence for any purpose, and because of its admission the judgment is reversed, and the cause remanded.

*Reversed and remanded.*

Hurt, Presiding Judge, absent.