# MAY 26, 1943

NICK CASCIO V. THE STATE.

No. 22497. Delivered April 28, 1943.
Rehearing Denied May 26, 1943.

50

GRAVES, Judge, dissenting.

The opinion states the case.

*Al Tempelton,* of Dallas, and *H. R. Bishop,* of Fort Worth, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Conviction is for theft of an automobile tire, wheel and inner tube from Mack Massey, punishment assessed at a fine of $500.00 and two years in the county jail.

On the night of February 28, 1942, Massey's car was parked on the street in Denton in front of his home. The spare wheel, tire and tube were in the trunk compartment of the car. Mrs. Woodrum lived across the street from Massey. About eleven o'clock that night she saw a dark car in the street and saw two men walking around the car. She called Mr. Massey on the phone. She could not identify the men. When Massey went to his car he discovered the property mentioned was gone. The tire was new, had never been on the ground. He immediately notified the officers. Later he found his property at the city hall, identified it and it was turned over to him by Jesse Griffith, one of the police officers.

Charles Selvidge, a student at the North Texas State Teachers College, testified that on the night of February 28, 1942, someone took a tire from his car which was parked in front of Chilton Hall. He recovered the tire the next day. Don Thomas, who also lived at Chilton Hall, testified that he saw two men get out of a car and one of them made several attempts to get in other cars which were parked in front of the hall. On direct examination the witness pointed out appellant as one of the men, but on cross examination said he could not swear to his identity, and on redirect said it was his opinion that appellant was the man he saw. Thomas did not see the man take anything from the Selvidge car. He reported to the police what he had seen, however.

Buddie Harris worked at the Goen Funeral Home in Denton. On the night in question his car was parked in front of the funeral home. The next morning he discovered the lock on the car had been broken. He did not say anything had been taken from his car.

Jess Griffith's evidence, in substance is as follows: He and other officers first had a report about the theft of the Massey tire, and then the report of the theft from Selvidge at Chilton Hall. On the way to the latter place they passed the funeral home, and saw a car parked there with one man in the car. The officers turned and went back and the car moved away. At this time two men were in the car. At this point the chase began. At one point the car the officers were following turned into the light from the officers' car, and some of the officers gave it as

their opinion that appellant was the driver of the car. Sometimes reaching a speed of 90 miles per hour the chase continued until the fugitive car turned over, as did also the officers' car, both cars going through a fence at a turn in the street. Both men ran away from their wrecked car and escaped arrest that night. There was a tire and wheel in the back seat of the car. It was a *used* tire. The trunk was locked. This witness did not examine the inside of the trunk. The Grace Barrow Motor Company took the cars in. Two hats were found at the scene of the wreck. Witness took them to the city hall and turned them over to Mr. Hodges.

Mr. Hodges, a deputy sheriff, testified that after appellant had made bond and gotten out of jail he asked witness if he would go to the city hall and "get his hat for him;" that witness did go and get one of the hats which officer Griffith had turned over to witness, delivered it to appellant, who said it was his hat.

Floyd Graham, a teacher at the North Texas State Teachers College was in the chase on the night in question. After the wreck he noticed the keys were still in the ignition lock on the fugitive's car. He took the keys and the next day gave them to Glen Lanford, who is also a city officer.

On recross examination of this witness appellant's attorney developed the following: "We got the Massey call first. I do not remember whether we got a description of the car. We got a description of the car at Chilton Hall. We saw a car that fit the description at the Goen and Farris Funeral Home."

Lanford testified on direct examination as follows:

"I was a city policeman in Denton on February 22, 1942. I remember when the police car turned over on West Oak Street. I came on duty the next morning. I know where the Grace Barrow Motor Company is located. I went to the Grace Barrow Motor Company and saw a Ford that had been wrecked. I looked at two cars there. The wrecked city car was there also. I examined the other car. I made two trips down there. It was a 1940 or 1941 black Ford. It had a trunk on it. The trunk was locked. I unlocked the trunk with a key. I got the key from an officer that was in the chase. I got the keys from Floyd Graham. He is a Deputy City Marshall and Teacher at the Teachers College. I opened the trunk and examined it. I found two tires there. There were two tires and wheels in the trunk. One of them was bolted down. I judge it was the spare tire of the car.

The other tire and wheel were lying loose in the trunk. The one that I took out of the trunk was a size 650 x 16 U. S. Royal tire. It appeared to be a new tire. The tire was on a wheel. It was a dark grey Pontiac wheel with a red stripe. I took it to the city hall and Mark Massey identified it as his tire."

We have been at some pains to detail the evidence at greater length than would ordinarily be thought necessary on account of appellant's contention that the evidence does not connect him with the Massey property. The case of Hampton v. State, 138 Tex. Cr. R. 408, 136 S. W. (2d) 820, is cited as supporting appellant's contention. There, by inadvertence likely, the State left a gap in the evidence which failed to connect Hampton with the stolen car. We discover no such defect here as is apparent from the evidence related.

Appellant objected to the testimony of Selvidge and Thomas as to the incident occurring at Chilton Hall, and as to the loss by Selvidge of a tire, wheel and tube, on the ground that it was proof of an extraneous crime which did not come within any exception to the general rule prohibiting such proof. The trial court says in his explanation of the bills (Nos. 1 and 2) complaining of the matters mentioned, that the evidence was admitted upon the question of system and identity of appellant. In Lawrence v. State, 128 Tex. Cr. R. 417, 82 S. W. (2d) 647, we said: "Reverting now to the State's other contention that proof of the other offenses by appellant was admissible to show 'system.' The use of this unqualified term as pointing out another exception to the general rule which excludes proof of extraneous crimes has been productive of much confusion. It has been held many times that the fact that two or more crimes were committed in the same way does not show system. Long v. State, 39 Tex. Cr. R. 537, 546, 47 S. W. 363; Smith v. State, 52 Tex. Cr. R. 80, 105 S. W. 501; Missouri v. State, 109 Tex. Cr. R. 193, 4 S. W. (2d) 68. The mere fact that two or more distinct crimes were committed in the same way, or even in pursuance of the same conspiracy, does not show system..Hunt v. State, 89 Tex. Cr. R. 89, 229 S. W. 869; Cone v. State, 86 Tex. Cr. 291, 216 S. W. 190; Long v. State, 39 Tex. Cr. R. 537, 47 S. W. 363; Smith v. State, 52 Tex. Cr. R. 80, 105 S. W. 501."

It is our understanding that evidence developing a system used in the commission of crimes is not admissible unless it goes to the identity of accused as the perpetrator of the offense for which he is then on trial, or to show intent, where that is an

issue, or where it aids in solving some other pertinent issue in the case on trial. From the language of the trial court in explaining certain bills we think it was in connection with the identity of appellant that the term "system" was used. Under the facts here present, however, we question the application of that principle to some of the evidence admitted over objection.

Upon the question of "identity" we are of opinion the trial court properly admitted the evidence of Selvidge and Thomas regarding the incident occurring at Chilton Hall, and the finding of Selvidge's property in the fugitive car. It will be remembered that no one identified appellant in connection with the Massey theft. The identification of him by Thomas and others was made under such circumstances as permitted proof of other circumstances upon the issue of identity, such as the finding of a hat at the scene of the wrecked car, which hat was subsequently claimed by appellant, and the finding in said car of both Massey's and Selvidge's property.

By bill of exception number three appellant complains because of the admission over objection of the testimony of Mr. Harris to the effect that his car which was parked in front of the funeral home had been tampered with on the night Massey's property was stolen. This evidence was admitted on the ground that it showed system and identity of appellant. The court fell into error in overruling the objection to this evidence. Harris did not discover until the next morning that the lock on the trunk of his car had been broken. There was nothing in the incident to throw light on the identity of appellant as the party who stole Massey's property. In view of the penalty assessed we are unable to say that proof of the incident mentioned was not appropriated by the jury to the hurt of appellant. It certainly could have been so appropriated.

Bills of exception numbers four and five bring forward complaint that the State proved over objection that complaint had been filed against appellant for speeding on the night in question. The trial court properly concluded that it was error to have admitted this evidence and withdrew it from the jury. Ordinarily we hold that error in admitting such evidence can not be cured by its withdrawal. See Haney v. State, 57 Tex. Cr. R. 158; 122 S. W. 34; Musgrave v. State, 28 Tex. Cr. R. 57, 11 S. W. 927, and other cases cited in Branch's Ann. Tex. P. C., page 100. Moreover, we would hesitate to reverse the present case for this error alone in view of the withdrawal of the evidence, and the further fact that it was properly in evidence that appellant

during the effort to evade arrest was driving between 70 and 90 miles per hour, and in view of the further fact that in the cross examination of Mr. Moore, the sheriff, appellant's attorney developed the fact that three cases were filed against appellant.

Bill of exception number six is only a complaint at the action of the court in overruling the amended motion for new trial. It presents only those points which have already been discussed.

For the error discussed, the judgment is reversed and the cause remanded.

BEAUCHAMP, Judge, (Concurring).

I am concurring in the reversal of this case, with the observation that proof of other crimes does not become admissible merely because it shows system. This they may do and yet throw no light on any issue in the case on trial. The system used may reflect no important fact further than that the party is a criminal generally. If so, it is not admissible. However, if the system shown throws light on an issue of identity, intention, guilty knowledge, motive, malice, or to rebut a special defense as alibi, when an issue, it may be appropriately shown. The frequent expression that the circumstance of an "extraneous offense is admissible because it shows system" is improper unless the system shown aids the State in an issue in the particular case.

I am of the opinion that the evidence of the breaking of the lock on the car in front of the funeral home was improperly admitted. In the first place, there rests but a mere suspicion that appellant did the breaking, which suspicion was somewhat aided by proof of the theft of Massey's tire. On the other hand, proof of the breaking of the lock and of appellant's presence there at some time during the night had no relationship to the crime charged. The only relation sought to be made is in point of time which may be immaterial, unless some other connection is made. The dissenting opinion says that the transactions were similarly peculiar. I fail to see this because I am unable to discover from the evidence just how the lock was broken on the car in front of the funeral home. The tools used, the manner of breaking and other things which might be characteristic are lacking as to either car. We are merely told that they were broken. The most that can be said is that because appellant and another party were seen near the place where this car was parked and because it was proven that two other cars were

entered by appellant and tires taken therefrom during the same night it looked suspicious that he was the one that broke that one too. The jury would be apt to so conclude and it would be no reflection upon their intelligence, integrity or honesty of purpose if they did. If prejudicial matters find permanent lodgment in their minds they inadvertently and unconsciously enter into and affect the jurors' verdict. The knowledge of extraneous facts disclosed by a juror on his voir dire examination disqualify him if it be shown that such facts were of a prejudicial nature. It occurs to the writer that it should be much more serious if such extraneous fact comes to his knowledge after he is accepted as a juror, for he would then apply it to him more certainly in the consideration of his case.

Mr. Wharton in his Criminal Evidence, Vol. 1, page 120, (10th Ed.) says: "These momentous consequences demand a rigorous enforcement of the rule in criminal charges, that evidence of the collateral offense must never be admitted, unless the exception can be applied to more certainly demonstrate the truth."

Holding that collateral facts are generally irrelevant, we quote from Wharton as follows, Vol. 1, page 56, (10th Ed.) : "The reasons for this rule are obvious. One of the fundamental provisions of the Federal and state Constitutions is that the accused 'shall be informed of the nature and cause of the accusation.' To admit evidence of such collateral facts would be to oppress the accused by trying him on charges, of the nature and cause of which he has not been informed and which he has made no preparation to meet, and by prejudicing the jury against him through the publication of offenses of which, even if guilty, he may have long since repented, or which may have long since been condoned. Trials would thus be injuriously prolonged, the real issue obscured, and verdicts rendered on collateral issues. To sustain the introduction of such facts, as will be presently shown, there must be some connection established that will bring them into a common system with those under trial." Supporting this proposition Mr. Wharton cites Cesure v. State, 1 Tex. App. 19, 22; Pinckord v. State, 13 Tex. App. 468, 478; Williamson v. State, 13 Tex. App. 514, 518; Brown v. State, 56 Tex. Crim. Rep. 389, 120 S. W. 444; Saldiver v. State, 55 Tex. Crim. Rep. 177, 115 S. W. 584, 16 A. & E. Ann. Cas. 669; Campbell v. State, 55 Tex. Crim. Rep. 277, 116 S. W. 581; Patrick v. State, 45 Tex. Crim. Rep. 587, 590, 78 S. W. 947.

Another question not presented in the brief has impressed the writer as being applicable here. Mr. Branch says, Article

52, Section 166, page 99: "When the State's testimony, if believed, leaves no question as to the intent or identity of defendant, proof of an independent crime is not admissible on issue of intent or identity. Bink v. State, 48 Texas Crim. Rep. 600; 89 S. W. 1076. Davenport v. State, 49 Texas Crim. Rep. 11; 89 S. W. 1077. Harris v. State, 55 Texas Crim. Rep. 478; 117 S. W. 839. Clark v. State, 59 Texas Crim. Rep. 246; 128 S. W. 132. Windham v. State, 59 Texas Crim. Rep. 368; 128 S. W. 1130." This is supported by the opinion of Judge Davidson in the case of Davenport v. State, 89 S. W. 1077. The accused had played a confidence racket to get a bogus check cashed. The State proved all facts of the case from which a presumption of an intention to swindle the prosecuting witness would arise. It then introduced evidence of another and similar transaction in order to show his intention in the one for which he was being tried. Holding this to be reversible error, he said: "Extraneous crimes can be introduced to establish system, develop the res gestae, and show the intent, when they serve to do so, and they may also be used to identify the party on trial. *But it is only where some of these matters are in issue that extraneous crimes are admissible. None of these questions are controverted. The evidence is clear and succinct, if Holder told the truth. Appellant did not deny it, and introduced no evidence.*" Because of this the evidence was held inadmissible.

There is reason in this rule. If the State is able to make proof upon which it can safely rely without showing the commission of other offenses it should be satisfied with doing so, and they should not be admitted. This will eliminate the danger of juries fixing a punishment suited to the party on trial as a criminal generally rather than to the particular offense with which they are dealing. If the State's evidence is not clear and positive then the demands of justice and the public interest would warrant the trial court in resorting to proof of other crimes to show system if and when system will aid the State in an issue that has been raised. It is a settled rule that proof of extraneous crimes or another transaction is admissible when a part of the res gestae or when they tend to show intent, when intent is an issue, or to identify or connect the party on trial with the offense charged. Such evidence, however, should be carefully considered for proof of other offenses is not admissible to show intent, identity or res gestae, for which it is most frequently offered, unless an issue has been made on some of these.

In the case before us there is positive proof, undenied, establishing the fact that appellant was in possession of the stolen

property and that he was attempting to make his escape with it immediately after it was stolen, and under circumstances which would not readily yield to any claim that he had acquired it from another by any legitimate transaction. He offered no evidence to deny or mitigate the offense. There is nothing weak about the State's case and it occurs to the writer that the rule above mentioned by Branch is applicable here, and that the evidence of the breaking of the lock on the car at the funeral home would not, for this further reason, be admissible, even though it had some characteristics, which we do not find, identifying it as being similar to the crime charged. The fact that two or more distinct crimes may have been committed the same way does not show system. Long v. State, 47 S. W. 363; Barkman v. State, 52 S. W. 69, 72; Smith v. State, 105 S. W. 501. I am unable to see any unusual mark or peculiarity about the commission of the three offenses detailed in the evidence, for they were all done about like they might have been by any two men who should embark on a similar mission.

In the instant case there was no effort to prove an alibi and we fail to find any reason which would make the disputed evidence admissible.

Evidence of his connection with the theft of the tire near Chilton Hall was admissible for identification because the tire he stole there was in his car when the officers took it. The officers said appellant was the driver of the car and the jury could have so found from their testimony. However, they identified a stranger under difficulties. He was driving fast. They saw him from the rear by spotlight. The positive testimony that he was the man who stole the very tire found in his car so soon after the theft distinguishes this incident from the one we consider inadmissible. It was permissible to show that the officers saw him in the car containing the Massey tire, and it is not our intention to hold this part of the evidence inadmissible at any place they described.

I concur in the reversal of the case.

GRAVES, Judge (Dissenting).

The gist of the herein charged offense is whether or not appellant took the tire of Mr. Massey. It is shown by proof that appellant was seen prowling near the car of Selvidge, a car having driven up near the Selvidge car, and one person standing near the Selvidge car, and some one broke the lock of the Selvidge car and stole a tire, appellant being identified at this

place. Again, a dark colored car drove up near Mr. Massey's car and some one got out, one person standing near the dark colored car, and another prowling near the Massey car, and some one broke the lock of the Massey car and stole the tire, neither party being identified. Next, a dark colored car came up to the Goen's funeral home and stopped, one person getting out and being near the car, and soon thereafter another person appeared, and the lock on said car was shown to have been tampered with, appellant being identified as one of the persons present at the Goen's funeral home, as well as one of the persons present at the Selvidge car, the only difference in the two transactions being that the Selvidge stolen tire was found in appellant's car, and the lock on the car at the funeral home had merely been tampered with, but not broken, hence no completed theft at the funeral home.

If the theft of the Selvidge tire was admissible, it seems to me that the effort at theft of the Goen's tire would also be admissible in order to show who had stolen the Massey tire. The two thefts and the attempted one all having occurred at between ten and eleven o'clock the same night.

System is admissible not only to establish identity but also oftentimes to show intent. As showing identity herein, it seems that each time appellant is identified as being present, the offense was committed in a peculiar way and under similar circumstances. The prowlers drive up near a parked car, one remains near the car and probably keeps watch, the other tries to affect an entrance to parked cars, eventually tampering with the lock of the car, breaking it and stealing the tire therefrom; then on to another theft, performed under similar circumstances. If the Selvidge theft was admissible in order to show who took Massey's tire, then I think the effort at theft of the Geon's tire would also be admissible for whatever it might be worth. Under the doctrine of establishing the identity of the person who took the Massey tire, I think the system and manner of both of such actions upon the part of appellant, who was shown to have been present at each, would be of assistance to the jury in deciding who stole Massey's tire, it being the only one of the three transactions wherein appellant was not identified by witnesses, although all were performed in the same or similar manner.

Mr. Branch, in his Penal Code, p. 1285, Sec. 2347, has this to say:

"Proof of other offenses is admissible if such proof is a part of the res gestae of the alleged offense for which defendant

is being tried, or if it tends to show intent when intent is an issue, or serves to prove identity when identity is an issue, or when it is sought to show the guilt of defendant by circumstantial evidence and such proof of another offense connects or tends to connect the defendant with the alleged offense for which he is being tried, or when it tends to defeat the defensive theory. Kelley v. State, 31 Texas Crim. Rep. 211; 20 S. W. 365; Dawson v. State, 32 Texas Crim. Rep. 552, 25 S. W. 21; Mixon v. State, 31 S. W. 408; Fielder v. State, 40 Texas Crim. Rep. 187, 49 S. W. 376; Camarillo v. State, 68 S. W. 795; Bright v. State, 74 S. W. 912; Perry v. State, 78 S. W. 513; Penrice v. State, 105 S. W. 797; Johnson v. State, 52 Texas Crim. Rep. 202, 107 S. W. 52; Snodgrass v. State, 148 S. W. 1095; Stephens v. State, 154 S. W. 1001; Serrato v. State, 171 S. W. 1142; Johns v. State, 174 S. W. 610; Nowlin v. State, 175 S. W. 1070; Williams v. State, 285 S. W. 616; Kaufman v. State, 70 Tex. Cr. R. 440."

In the first case above, quoted, Kelley v. State, 31 Tex. Cr. R. 213, 20 S. W. 365, the accused was charged with the burglary of a photograph gallery. Proof of a further like burglary of such a gallery was also made at such time, as well as another and different burglary many miles away from the town in which such first two burglaries were committed, a portion of the stolen goods being found in the accused's possession at the time of his arrest. Judge Davidson said in that case:

"If the evidence tends to establish the res gestae, or to prove a relative or competent fact or circumstance connecting defendant with the crime charged, or to explain the intent of defendant in his connection with the property he is charged with stealing, or to make out his guilt by circumstances, it is competent for the State to adduce evidence of such extraneous crimes. House v. The State, 16 Texas Ct. App. 25; Kelley v. The State, 18 Texas Ct. App. 262; Musgrove v. The State, 28 Texas Ct. App. 57; Nixon v. The State, ante, p. 205; Whart. Crim. Ev., sec. 31."

In the case of Fielder v. State, 40 Tex. Cr. R. 187, 49 S. W. 376, the accused was charged with a burglary of the house of one Doty. The State proved a burglary and theft from the house of Davis eight miles away from Doty's house, and the theft of a saddle from Pool four miles further away, or a total of twelve miles from the Doty house, the first of the burglaries being in the daytime and the two latter ones in the nightime of the same day. This court disposed of this matter as follows:

"The testimony objected to was a part of the res gestae of the transaction charged against defendant, and served to

identify appellant, and connect him with the offense for which he was on trial; and, moreover, it appears to have been a part of a system embracing the offense charged. Appellant and his companion, Berryhill, seem to have been riding through the country. They first burglarized Doty's premises, in the daytime, the family being absent. They then proceeded on their way westward, and about 12 o'clock at night burglarized the premises of Davis, and took a saddle from his barn. They then proceeded on their journey, and about four or five miles further on stole from the premises of one Pool a saddle. They still pursued their journey to Raynor, in Stonewall County, where they were arrested two or three days later, with property taken from each of said premises in their possession. We think the testimony was admissible."

The gist of the proposition now under discussion is the admission of other or extraneous offenses for the purpose of establishing certain elements of the presently charged offense.

Mr. Wharton in his work of Criminal Evidence, Vol. 1, Tenth Ed., Sec. 30, lays down the general doctrine that an accused ought not to be convicted of a crime simply because he has been guilty of another offense, and forbids the introduction of such offense for the sole purpose of showing that by the commission of one crime the accused would likely commit another offense. However, he goes further in Sec. 31, and says "certain exceptions exist to the rule just stated." These exceptions fall under the following general divisions: (1) As part of the res gestae; (2) to prove identity of person or of crime; (3) to prove scienter or guilty knowledge; (4) to prove intent; (5) to show motive; (6) to prove system; (7) to prove malice; (8) to rebut special defenses; (9) relevancy in various particular crimes, and (10) we add, relevancy under a state of facts to be established by circumstances alone.

Again, Wharton on Criminal Evidence says, Sec. 39:

"When the object is to show system, subsequent as well as prior collateral offenses can be put in evidence, and from such system identity or intent can often be shown. The question is one of induction, and the larger the number of consistent facts, the more complete the induction is. The time of the collateral facts is immaterial, provided they are close enough together to indicate they are part of a system. In order to prove purpose or design, evidence of system is relevant; and in order to prove system, collateral and isolated offense are admissible from

which system may be inferred, or where crimes are so mutually connected or interdependent that the proof of one is not coherent without evidence of the other. But to be admissible as relevant under system the collateral, extraneous or independent offense must be one that forms a link in the chain of circumstances and is directly connected with the charge on trial."

Mr. Underhill on Criminal Evidence, 2Ed., Sec. 90, says:

"All evidence is relevant which shows, or tends to throw, any light upon the guilt or innocence of the prisoner, and relative evidence which is introduced to prove any material fact ought not to be rejected merely because it proves, or tends to prove, that at some other time or at the same time the accused has been guilty of some other separate, independent and dissimilar crime. The rule is well settled that all evidence must be relevant. If evidence is relevant upon the general issue of guilt or innocence, no valid reason exists for its rejection merely because it may prove, or tend to prove, that the accused committed some other crime, or may establish some collateral and unrelated fact." This proposition being supported by a long line of cases from many courts of the Union.

The main fact to be established herein is who took Mr. Massey's tire? Although appellant was seen and identified at Chilton Hall, where the Selvidge tire was taken, no one identifies him as the person present when Massey's tire was taken. This identification had to be made by circumstances. One of such circumstances was the presence of the Massey tire in the overturned car which appellant was identified as driving, and the further fact of his identity being established at the scene of the theft of the Selvidge tire. Then I think a further strong circumstance leading to his identification would be his presence at the Goen's car, the lock of which had been tampered with, such lock tampering having been present in each of the tire thefts.

Again, I think the Kelley case and the Fielder case, supra, are authority that the Goen's incident was admissible as res gestae, as part of the whole transaction, performed in the same way and at practically the same time.

Again, I think such Goen's incident was a part of the whole transaction in that same was a part of appellant's flight with the stolen goods in his possession, as was evidenced by the high rate of speed and recklessness with which he left the Goen's place and eventually turned his car over in a blind street. The

flight itself is admissible; then why not the circumstances just prior thereto? If that which appellant was engaged in doing just immediately before the flight was admissible, then should the further one isolated fact that the trunk lock on the Goen's car had been tampered with have so greatly injured this appellant that such should cause him irremediable damage?

I think that if this man had been present at two other places where trunk locks or cars had been tampered with and two tires taken therefrom, and afterwards found in his possession, then as a circumstance to show the identity of the thief of the Massey tire, which was to be proven before the jury, it should have been shown that when found near another car, its trunk lock also tampered with, that appellant, when detected, fled therefrom, would be a strong circumstance showing who had tampered with two other locks in the same town and at about the same time.

Thus believing, I do not agree with the majority opinion that reverses this case because it was shown that the Goen's car trunk lock had been tampered with.

### ON STATE'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The State, through the County Attorney of Denton County, has filed a motion for rehearing in this cause which has been carefully considered, but it is the opinion of the writer that much of the discussion is foreign to the real issue upon which the case was reversed. The record can not be corrected by filing additional papers in this court. We must look to the copy of all proceedings as contained in the transcript; and the State had the privilege of seeing that it correctly transferred to this court the record of the proceedings which took place below. Neither are we in position to take the advice of counsel to not reverse cases unless it positively appears that the testimony wrongfully admitted resulted in injury. There are cases in which the appellant is entitled to the benefit of the doubt on questions of law as well as of fact and it is the duty of this court to so hold in an appropriate case.

If there was a written charge in the case and if that charge was sufficient to remove the error for which the case was reversed then it should have been contained within the original transcript. We cannot grant permission to file affidavits to that effect at this time.

The motion for rehearing is overruled.